**Exhibit D**

**Liquidation Analysis**

**1) Introduction**

Chisholm Oil and Gas Operating, LLC and certain of its affiliates (collectively, the "**Debtors**"), with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") in connection with the *Joint Chapter 11 Plan of Reorganization of Chisholm Oil and Gas Operating, LLC and its Affiliated Debtors* (as amended, supplemented, or modified from time to time, the "**Plan**") and related disclosure statement (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").[8]

The Liquidation Analysis permits parties in interest to evaluate whether the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code, also referred to as the "best interests of creditors" test. Under this test, the Bankruptcy Court must find, as a condition to confirmation of the Plan, that each holder of an impaired Claim against or Interest in the Debtors either (i) has accepted the Plan or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code, the Debtors, with the assistance of their advisors, have prepared the following Liquidation Analysis, which is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

To demonstrate satisfaction of the "best interests" test, the Debtors have:

i) estimated the cash proceeds (the "**Liquidation Proceeds**") a chapter 7 trustee (the "**Trustee**") would generate if each Debtor's Chapter 11 Case was converted to a case under chapter 7 on the Effective Date and the assets of such Debtor's Estate were liquidated;

ii) determined the distribution (the "**Liquidation Distribution**") each holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated under chapter 7 of the Bankruptcy Code; and

iii) compared each holder's Liquidation Distribution to such holder's distribution under the Plan if it were confirmed and consummated.

---

[8] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or Plan, as applicable.

Accordingly, asset values discussed herein may be different than amounts referred to in the Plan and the Disclosure Statement.

THE DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN OR IN THE DISCLOSURE STATEMENT OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS.  IF THE CHAPTER 11 CASES ARE CONVERTED TO CASES UNDER CHAPTER 7 OF THE BANKRUPTY CODE, ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THIS LIQUIDATION ANALYSIS.

NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION, ADMISSION, OR ALLOWANCE BY THE DEBTORS (OR ANY OTHER PARTY) OR OF ANY CLAIMS BY OR AGAINST THE DEBTORS.  THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH HEREIN SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS OR ALLOWED INTERESTS UNDER THE PLAN, OTHER THAN THE PRESENTATION OF A HYPOTHETICAL LIQUIDATION ANALYSIS.  ACCORDINGLY, THE ASSET VALUES, AMOUNTS, AND/OR PRIORITY OF ALLOWED CLAIMS IN THIS LIQUIDATION ANALYSIS COULD DIFFER MATERIALLY FROM THE AMOUNTS SET FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT.

**2) Process and Assumption Overview**

This Liquidation Analysis was prepared by the Debtors with the assistance of their advisors and assumes that the Debtors' assets would be liquidated in a jointly administered but nonconsolidated basis. This analysis has been prepared assuming that the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code on or about September 30, 2020 (the "**Conversion Date**").  The Debtors have assumed that the liquidation would occur over a three-month time period in order sell substantially all of the Debtors' assets, monetize and collect receivables and other assets on the pro forma balance sheet, and an additional three-month time period to administer and wind-down the Estates.

Except as otherwise noted herein, this Liquidation Analysis is based upon the Debtors' projected consolidated balance sheets as of September 30, 2020, which values are assumed to be representative of the Debtors' assets and liabilities.  Any projected balance sheet amounts presented in this Liquidation Analysis are assumed to be the actual balances on the Conversion Date.  In addition, this Liquidation Analysis incorporates certain adjustments to account for the effects of the chapter 7 liquidation process, including post-conversion operating cash flow, costs of winding down the Debtors' Estates, employee-related costs, and professional and chapter 7 trustee fees.

This Liquidation Analysis assumes that, on the Conversion Date, the Bankruptcy Court would appoint a Trustee who would sell the assets of the Estates and distribute the cash proceeds, net of liquidation related costs, to creditors in accordance with the priority scheme set forth in the

Bankruptcy Code. To maximize recovery values for the Debtors' assets in an expedited process, this analysis assumes that the Trustee would first develop a liquidation plan to generate proceeds from the sale of the Debtors' assets for distribution to creditors. This Liquidation Analysis assumes the appointed Trustee will retain lawyers and other necessary advisors to assist with the establishment of the liquidation plan and ultimate liquidation of the Debtors' assets.

All assets are contemplated to be sold within the three-month wind-down period. Asset values in the liquidation process are assumed to be driven by, among other things:

- the time frame in which the assets are marketed and sold;

- the potential loss of key personnel;

- forward commodity price curves;

- partner and vendor reaction;

- current market conditions; and

- the general forced nature of the sale

The cessation of business in a liquidation under chapter 7 of the Bankruptcy Code is likely to trigger certain Claims against the Estates that otherwise would not exist under a Plan absent the liquidation. Examples of these kinds of Claims include various potential employee claims (such as potential severance claims), new bonding or letters of credit for plugging and abandonment ("**P&A**") liabilities, claims related to the rejection of executory contracts, and unexpired lease rejection damages. Such Claims could be material and may be entitled to administrative or priority payment status. Priority Claims would be paid in full from the Liquidation Proceeds before the balance would be made available for distribution to holders of General Unsecured Claims.

This analysis was prepared before the passage of any Bar Dates, and the Debtors have not had an opportunity to fully evaluate potential Claims against the Estates or to adjudicate such Claims before the Bankruptcy Court. Accordingly, the amount of the final Allowed Claims against the Debtors' Estates may differ substantially from the Claim amounts used in this Liquidation Analysis. Additionally, asset values discussed herein may be different than amounts referred to in the Plan, which presumes the reorganization of the Debtors' assets and liabilities under chapter 11 of the Bankruptcy Code.

No recovery or related litigation costs have been attributed to any potential avoidance actions under the Bankruptcy Code, including potential preferences or fraudulent transfer actions due to, among other issues, the cost of such litigation, the uncertainty of the outcome, and anticipated disputes regarding these matters. The Plan also retains certain Causes of Action, for which it is likely that any potential proceeds from such retained Causes of Action would be recoverable under both the Plan and in a chapter 7 liquidation. Additionally, the Liquidation Analysis does not include estimates for tax consequences, both under Federal and state law, that

may be triggered upon the liquidation and sale of the Debtors' assets. The tax consequences could be material.

**3) Distribution of Net Proceeds**

(1) Any available net proceeds from the sale of the Debtors' assets after the Conversion Date would be allocated to holders of Claims and Interests in accordance with section 726 of the Bankruptcy Code, which provides for the following priority scheme:

- <u>Liquidation Adjustments</u> – includes estimated fees paid to the U.S. Trustee, wind-down costs, Trustee fees, and fees and expenses of advisors and other professionals retained by the Trustee;

- <u>Other Priority and Other Secured Claims</u> – includes Claims from counterparties that are able to assert senior priority liens on the Debtors' assets, including certain trade vendors, taxing authorities, and other holders of potential Other Priority Claims;

- <u>RBL Claims</u> – includes estimated Claims arising under the RBL Agreement and any documents related thereto;

- <u>General Unsecured Claims</u> – includes estimated Claims arising under the Term Loan Agreement and other prepetition General Unsecured Claims; and

- <u>Interests</u> – includes estimated Interests in the Debtors.

Under the absolute priority rule, no junior creditor shall receive any distribution until all senior creditors are paid in full, and no equity holder shall receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

The Debtors believe that the present value of distributions from the net Liquidation Proceeds, to the extent available, may be further reduced because such distributions in a chapter 7 may not occur until after the three-month liquidation period assumed in the analysis. Moreover, in the event that litigation becomes necessary to resolve Claims asserted against the Debtors in a chapter 7 liquidation, distributions to holders of Claims may be further delayed, which both decreases the present value of those distributions and increases administrative expenses that could diminish the Liquidation Proceeds available. The effects of this potential delay on the value of distributions under this Liquidation Analysis have not been considered in this analysis.

**4) Conclusion**

The determination of hypothetical Liquidation Proceeds is a highly uncertain process involving the use of numerous estimates and assumptions, which, while considered reasonable by the Debtors and the Debtors' advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors.

The Debtors have determined, as summarized in the table below, that upon the Effective Date, the Plan will provide all holders of Claims against and Interests in the Debtors with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code and thus believe the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

**Summary of Recoveries**

*$ in millions*

| Class | Type of Claim or Interest | Projected Claim[1] | Plan Recovery[2] | Estimated Liquidation Recovery |
|---|---|---|---|---|
| Class 1 | Other Priority Claims | $4.8 | 100.0% | 100.0% |
| Class 2 | Other Secured Claims | 5.7 | 100.0% | 100.0% |
| Class 3 | RBL Claims | 263.0 | 25.1% to 26.6% | 19.9% |
| Class 4 | General Unsecured Claims[3] | 281.8 | 0.0% to 0.5% | 0.0% |
| Class 5 | Convenience Class Claims | – | 0.0% to 0.5% | 0.0% |
| Class 6 | Intercompany Claims | – | 0.0% | 0.0% |
| Class 7 | Chisholm Parent Equity Interests[3] | – | 0.0% | 0.0% |
| Class 8 | Chisholm Management Equity Interests | – | 0.0% | 0.0% |
| Class 9 | Intercompany Interests | – | 0.0% | 0.0% |

[1] Plus accrued interest, fees, or other expenses.
[2] Range of recovery based on whether Class 4 and 7 vote to Reject or if Class 4 and 7 vote to Accept and equity ownership is diluted by Warrants and MIP.  No current value is attributed to the Warrants.
[3] Warrant value only realized for price exercised beyond strike price, and dilutive to that amount.

The following table summarizes the Liquidation Analysis for the Debtors, presented on a consolidated basis. The Liquidation Analysis should be reviewed with the accompanying "Specific Notes to the Liquidation Analysis" set forth on the following pages.

**Liquidation Proceeds**

| $ in millions | Notes | Pro Forma BS 9/25/20 | Recovery Estimate % Low | Mid | High | Recovery Estimate $ Low | Mid | High |
|---|---|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | | | |
| Cash | [1] | $ 5.2 | 100.0% | 100.0% | 100.0% | $ 5.2 | $ 5.2 | $ 5.2 |
| Accounts Receivable - Oil and Gas Sales | [2] | 4.9 | 90.0% | 95.0% | 100.0% | 4.4 | 4.7 | 4.9 |
| Accounts Receivable - JIB and Other | [3] | 1.9 | 0.0% | 5.0% | 5.0% | - | 0.1 | 0.1 |
| Prepaid & Other Current Assets | [4] | 3.8 | 20.0% | 25.0% | 30.0% | 0.8 | 1.0 | 1.1 |
| Total Current Assets | | 15.8 | 65.5% | 68.9% | 71.6% | 10.4 | 10.9 | 11.4 |
| **Long Term Assets** | | | | | | | | |
| O&G Properties | [5] | 296.3 | 18.0% | 19.0% | 20.2% | 53.2 | 56.3 | 59.9 |
| Other PP&E | [6] | 120.3 | 2.0% | 3.4% | 4.7% | 2.4 | 4.0 | 5.7 |
| Other Assets | [7] | 5.1 | 0.0% | 0.0% | 0.0% | - | - | - |
| Total Long Term Assets | | 421.7 | 13.2% | 14.3% | 15.6% | 55.6 | 60.3 | 65.6 |
| **Gross Liquidated Assets** | | $ 437.5 | 15.1% | 16.3% | 17.6% | $ 66.0 | $ 71.2 | $ 76.9 |
| **Less Liquidation Costs** | | | | | | | | |
| Wind Down Costs | [8] | | | | | (4.7) | (4.7) | (4.7) |
| Chapter 7 Trustee Fees | [9] | | | | | (1.8) | (2.0) | (2.2) |
| Chapter 7 Professional Fees | [10] | | | | | (1.5) | (1.7) | (1.8) |
| Total Liquidation Adjustments | | | | | | $ (8.0) | $ (8.3) | $ (8.6) |
| **Net Liquidated Assets** | | | | | | $ 58.0 | $ 62.9 | $ 68.3 |

**Summary of Estimated Claims Recovery**

| Claims and Recoveries | | Estimated Claims[1] | Recovery Estimate % Low | Mid | High | Recovery Estimate $ Low | Mid | High |
|---|---|---|---|---|---|---|---|---|
| Administrative and Other Priority Claims | [11] | 4.8 | 100.0% | 100.0% | 100.0% | 4.8 | 4.8 | 4.8 |
| Other Secured Claims | [12] | 5.7 | 100.0% | 100.0% | 100.0% | 5.7 | 5.7 | 5.7 |
| RBL Claims | [13] | 263.0 | 18.0% | 19.9% | 22.0% | 47.5 | 52.4 | 57.8 |
| General Unsecured Claims | [14] | 281.8 | 0.0% | 0.0% | 0.0% | - | - | - |
| Intercompany Claims | [15] | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Chisholm Parent Equity Interests | [16] | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Chisholm Management Equity Interests | [16] | - | 0.0% | 0.0% | 0.0% | - | - | - |
| | | $ 555.3 | 10.4% | 11.3% | 12.3% | $ 58.0 | $ 62.9 | $ 68.3 |

## SPECIFIC NOTES TO THE LIQUIDATION ANALYSIS

**Liquidation Proceeds**

*Gross Liquidation Proceeds*

1. <u>Cash & Cash Equivalents</u>: Pro-forma cash estimate as of September 25, 2020. All projected cash and equivalents on hand have an expected recovery of 100%.

2. <u>Accounts Receivable, Oil and Gas Sales</u>: Oil and gas production amounts are assumed to be highly collectible based on counterparty credit quality and payment history. Receipts are related to sale of oil and natural gas, due within 30 days following the end of the month of production. Outstanding receivables have an expected recovery range of 90% to 100%.

3. <u>Accounts Receivable, Joint Interest Billing and Other</u>: Joint interest billing receivables include receivables from joint interest owners for their share of lease operating expenses, capital expenditures, production taxes, and gathering and transport fees, among other items. These receivables are expected to be less collectible than receipts for production as joint interest owners are likely to attempt to offset their potential Claims against the Estates for unpaid royalties and lost revenue by holding back these receivables. Outstanding joint interest receivables have an expected recovery of up to 5%.

4. <u>Prepaid and Other Current Assets</u>: Includes prepaid expenses, inventory, and other miscellaneous assets. The recovery range is estimated at 20% to 30% for each of the following assets:

    a. Prepaid Expenses – comprised of prepayments made on account of expenses, insurance, and deposits, with total net book value of $1.1 million.

    b. Inventory – consists of production equipment, including casings, piping, and structures, with total net book value of $2.7 million.

5. <u>O&G Properties</u>: The Liquidation Analysis assumes that the Trustee sells or otherwise monetizes the reserves and associated equipment owned by the Debtors, in logical regional or geological packages, or on a piecemeal basis, with sales to buyers during the three-month period. The estimated values realized for such assets reflect, among other things, the following factors:

    a. long-term supply and demand fundamentals for oil and natural gas;

    b. projected prices for oil and natural gas;

    c. production and operating performance for each asset;

    d. operating and maintenance costs for each asset;

    e. production results based on restoring production at well sites; and

    f.  capital and environmental expenditure requirements.

In assessing the liquidation value of the reserves, the Debtors considered a range of discount rates across stratified reserve categories, including proved developed producing reserves, in addition to assessing the Debtors' other land and operating assets. The reserves reviewed were a roll-forward of the Debtors' internal reserve report and valued as of October 1, 2020, plus expenses necessary to operate during a sale process through December 31, 2020.

Due to the appointment of a Trustee and the Debtors' assumed insufficient liquidity and access to capital to maintain, develop, or expand production and future reserves, sale values of gas and pipeline assets would be depressed and would likely result in a valuation discount relative to "fair value." This Liquidation Analysis assumes an estimated range of gross liquidation proceeds from oil and gas property and pipeline assets between approximately $53.2 million and $59.9 million, resulting in an expected recovery range between 18% and 20.2%.

6. <u>Other PP&E:</u> Represents vehicles, furniture, and fixtures, and other equipment. Liquidated assets have been depreciated according to accounting policies by the Debtors, and in a liquidation would be expected to be sold at a further discount. As a result, Other PP&E assets are assumed to have a blended recovery in the range of 2% to 4.7% of net book value.

7. <u>Other Assets:</u> Includes line fill inventory. The Liquidation Analysis assumes no recovery.

*Chapter 7 Liquidation Adjustments*

8. <u>Wind-Down Costs:</u> The total wind-down costs are estimated to be approximately $4.7 million, which includes personnel and overhead costs, including expenses for incremental noticing, document retention, and final tax filings. For those employees that are retained during the liquidation process, the analysis includes estimated salary, paid time off, and severance expense, notably to retain the services of existing personnel.

9. <u>Chapter 7 Trustee Fees:</u> This would be limited to the fee guidelines in section 326(a) of the Bankruptcy Code. The Liquidation Analysis includes trustee fees of 3.0% of entity gross Liquidation Proceeds, excluding cash.

10. <u>Chapter 7 Professional Fees:</u> This includes the estimated cost for advisors, attorneys, and other professionals retained by the Trustee. In this Liquidation Analysis, chapter 7 professional fees are estimated to be between $1.5 million and $1.8 million. However, this

amount can fluctuate based on length and complexity of the wind-down process and could be substantially greater than the amounts assumed herein.

**Claims & Recoveries**

*Priority and Other Senior Claims*

11. <u>Administrative and Other Priority Claims:</u> Includes Administrative Expense Claims and Other Priority Claims, such as post-petition accrued and unpaid accounts payable, production taxes, and interest owner royalty payments, all totaling $4.8 million as of the Conversion Date.

12. <u>Other Secured Claims:</u> Includes estimated Claims from counterparties that are able to assert senior priority liens on corresponding assets of the Debtors. To the extent a vendor is not able to assert a valid senior priority lien, these amounts may be treated as General Unsecured Claims.

*RBL Claims*

13. This Liquidation Analysis assumes that the outstanding principal balance under the RBL Credit Agreement is approximately $263 million. Implied Liquidation Proceeds to holders of such Claims would range from $47.5 million to $57.8 million, which represents recoveries of 18% and 22% of the total RBL Claims, with a mid-point recovery of 19.9%.

*General Unsecured Claims and Convenience Class Claims*

14. General Unsecured Claims, including Convenience Class Claims, primarily consist of prepetition trade payables, lease rejection and executory contract claims, severance claims, and other accrued liabilities; the deficiency balance of RBL Claims; and the Term Loan Claims. Holders of General Unsecured Claims are projected to receive no recovery under the Liquidation Analysis.

*Intercompany Claims*

15. Intercompany Claims are projected to receive no recovery under the Liquidation Analysis.

*Equity Interests*

16. Chisholm Parent Equity Interests and Chisholm Management Equity Interests are projected to receive no recovery under the Liquidation Analysis.